Please step forward. Identify yourself and how much time you need. My name is Jonathan Byer. We're representing the appellees slash cross appellants. And I'd like 15 minutes, also five minutes for rebuttal time on our cross appeal, please. Good morning, Justices. My name is Jeffrey Hart on behalf of the plaintiff appellant. We're requesting 15 minutes and a five-minute rebuttal as well. Okay. Mr. Hart, what issues do you intend to address? Damages. Damages. Okay. And then in the response to their appeal, respond to the issue of intentional torturous conduct, the alleged insufficiencies of the complaint and those other issues. And the issues that you were going to address as sanctions? We'll address a number of issues. First, the sufficiency of the complaint regarding the default judgment, the abuse of discretion entering a default order, as well as the damages issues raised in both the appeal and cross appeal. I would ask that if you would concentrate your arguments on the default and the sanctions and not the related issues, the complaint and so forth. Sorry, just for clarification, do you mean the default in and of itself or the default plus the sufficiency of the complaint? Just so I understand. Just the default, not the sufficiency of the complaint. Okay. Thank you. If that's the case, then I think we probably only need about ten minutes. I probably need just a little bit more background information. Okay. In that event, do you want to go first then? I mean, that makes sense. Do you agree? Whatever the court prefers. Okay. Why don't you go first since it's your issue? May it please the Court, the default, the discovery sanction of a default that was entered here was an abuse of discretion. This Court's case law, case law from across the state, is clear that default may not be entered as a discovery sanction of first resort. And that is precisely what happened here. Quite literally the first time Mr. Locascio complained to the circuit court regarding the discovery responses provided by the defendants, the circuit court did not enter any lesser sanction than the most severe available, a default. And the precedent is quite clear that default is the most severe sanction. As a result, it is to be used only as a last resort when nothing else in the circuit court's arsenal of sanctions will ensure the prime goals of discovery and the prime goals of discovery sanctions, which is completion of discovery and a trial on the merits. So what about the default that had been entered and the failure to answer and the fact that, you know, from the get-go in this case, there seemed to be a non-cooperation or a city wasn't forthcoming on moving this litigation along. And the plaintiff tried to do so and so did the court. There are two responses to that, Your Honor. First, the decision in marriage of lie makes clear that issues unrelated to the completion of discovery, which the initial default certainly was, that was regarding the response to the complaint, a pleading response to the complaint, was unrelated to discovery. That was merely a response of pleading issue. And marriage of lie actually involved quite severe conduct. It was not minor conduct on part of the person sanctioned. In marriage of lie, the individual had kidnapped his daughter in violation of a court order regarding the treatment of his daughter. But the appellate court made quite clear that that issue could not be used to justify sanctions. And that's with very good reason because orders unrelated to discovery do not implicate the willingness to comply. They do not show that the party being sanctioned was not willing to comply with discovery. That no amount of sanction would result in discovery. But it's part of the case. It is part of the case. Maybe that court was incorrect in that maybe judges should take account of that in discovery. Usually pleading issues come before discovery, as in this case. And if there's a history involved in a uncooperative party and it gets to discovery, why shouldn't the court take note and consider that? Because it's part of what's been going on with this case. And otherwise, you really do two wrongs make a right. I'm not trying to say that two wrongs make a right, Your Honor. But the question is whether the previous default, previous sanctions, previous problems in the case, obviously it's part of the same case, indicate that the party will never comply with discovery, that nothing the circuit court could do, no sanction of any kind, would result in discovery. You don't deny that you didn't comply with several discovery orders, do you? We don't deny that. We could not deny that. So what would you have recommended that the circuit court do? There is a whole host of options. Can you tell me specifically what should have been done in order to get the defendants to comply with the discovery order? For instance, monetary sanctions would have been, would have seemed acceptable here, that they would have compensated plaintiff's counsel for the time spent. The judge tried that and the city didn't pay. The city did pay. There were monetary sanctions that were paid. Not at the time that they were due. They had to go back to court to get the money, didn't they? I cannot speak to how. The problem is that there are complexities with payment of money from the city that I'm not entirely familiar with, but requests have to be submitted and it's outside of the individual attorney's ability to. But you keep the court informed and you keep the other side informed and you go to court and say, Your Honor, this is a procedure. We can't meet that deadline because of X, Y, and Z. Give us more time. Rather than, or should the rule be that a party can just ignore a court order that says a deadline. Just ignore it because they can't make it. We would definitely not submit that a court should, that a party should just ignore the court's orders. But in this case, you didn't go ahead and tell the judge we can't, or we can't meet that deadline. It's not clear from the record I do, the record as to whether that was said. I do not believe it was said, but I cannot speak one way or the other as to what was said regarding that. But the issue is that the money was, to my understanding, and I do not believe that as contested, that the money was paid. That it was paid. And that if a monetary sanction had been entered, that that would have been paid and the litigation would have moved forward on the merits. A few points are very important here. First, when the default was entered, discovery responses had already been submitted by the defendants. There were answers from Abdel Latif, Porter, Longini, and McKillop. It was incomplete, right? I do not believe so. After the initial order of discovery, there were three or four continuances. And then after each time, there was more forthcoming, as I recall. But that ties into the exact problem with entering a default as a discovery sanction. If a party is defaulted, then the facts of the complaint have been admitted. And there is, you know, as this court has pointed out, as the appellate court has pointed out multiple times, that the point of increasing discovery sanctions start low and move up is that it encourages the completion of discovery. But default, there are strong incentives for a litigant not to comply. That actually incentivizes the litigant to, because they can take an appeal and challenge the sufficiency of the complaint, to not comply with discovery. And that actually counteracts. That actually runs counter to the purposes of discovery sanctions, which is trial on the merits and completion of discovery. We already, from the point of view of the court, there were sanctions, monetary sanctions, with regard to the answer. And that wasn't paid on time. It may have been paid. So apparently, the fact that monetary sanctions are out there did not seem to concern the city when it came to discovery. Otherwise, you would have thought that that sanction would have had some kind of effect on the city so that, in connection with discovery, they would have been more forthcoming. I would not say that they did not concern the city. The record doesn't indicate that. If a court sets orders and dates, how do we, as a court, ensure that parties comply with their orders? It's through the sanctions process. But, again, a default completely precludes any trial on the merits, which is the ultimate goal, that it will depend from case to case. That's why it's difficult for me to synthesize an appropriate sanction here, because it will turn on the case. It will turn on what the concerns the circuit court has at the time and what it believes will encourage discovery. So it turns on concerns the circuit court might have at the time. Yes. What factors, then, would you suggest the court should have considered in determining the appropriate sanctions? Well, the first is, as we highlight in our briefs, whether any lesser sanction than a default would encourage or would coerce the party to comply with discovery. And discovery was being complied with. And also, the court has to believe that when it enters the default, the court has to believe that it could not possibly impose a sanction less than default. That will encourage discovery. But here the court seemed to believe the discovery was just going to proceed anyway. It repeatedly continued the default order. Mr. Ocasio represents that there were multiple default orders. That is completely misrepresenting what was done here. The court merely entered an order to say that there was still a default order. It wasn't a new order in the sense that it imposed a sanction that wasn't there. There's actually an order in the record that, at one point, indicated the city was not in default. So I'm not sure what was the meaning of that particular order. The next order that followed said the city was again in default. But there was the court seemed to believe, even at the very end, even when there was some issue regarding a motion to vacate, where the court was indicating that it wanted discovery to be finished. It wanted this deposition of contursity to be finished. The court itself indicated, the circuit court itself indicated, it never believed that discovery would not be completed here. It fully believed it would. You're talking about Judge Lawrence, not Judge Egan. I'm not entirely sure which of the judges was that. Judge Lawrence had entered the sanction. Judge Egan, who had the hearing on the sanctions. There was a hearing also regarding some post-judgment, post-default. Before Judge Lawrence. I believe so, but I'm not exactly sure as to which of the judges heard these because there were judges switching back and forth. But the issue was the court itself indicated that it believed that discovery was ongoing and that discovery be completed. And this also highlights a problem with entering default as a sanction of first resort. Here the city offered the one piece of discovery that was not complete, the deposition of miscontursy. And Mr. LoCasto refused to take the deposition, said I'm not playing these games, I want my proof up. But of course the litigant will say that they want their proof up. They want to move forward. Of course they're not going to do that. Entering a default as a sanction of first resort for the purpose of continuing discovery, as it seems to be the case here, only short circuits the entire discovery process. It leaves the opposing party in the position to hold the litigation hostage. And that is exactly what happened here. As to factors the court should consider, one would be if there's a lesser sanction available. Yes. Is there anything else that you would suggest that would be considered by the court? Whether any discovery has been completed, whether there has been, we did not brief this so I apologize if this is not, this was not raised in the brief at all, in any of the parties' brief. Whether any discovery has been completed at the time the sanction was requested, which as it was here, there was discovery complete. There were answers provided. So in certain respects the sanction motion was working. The sanction, the entry of this potential default order and being continued was working because discovery was being produced. There was, but this was before the default was entered. The default was entered on July 22nd and these responses were filed on the 21st, which meant that they were being prepared prior to that moment. So that does not in any way indicate that the sanction was successful in encouraging discovery. And it would be most troubling if circuit court judges were allowed to immediately default and say this is really effective, people will comply with my orders, if I just default them and then hold that over their heads. Because again, there are issues with compliance by the opposing party. There are issues with will the circuit court actually vacate a default? That's a discretionary remedy by the circuit court. Whether that will happen, will there be a great deal of expense spent by a party? If it's a large corporation, for instance, if it's extensive, lengthy discovery that requires a lot of document production, there could be a great deal of expense in the hopes that the default would be vacated. You're talking about progressive sanctions. Would it have been helpful if the city had been informed that if you don't comply with discovery, we're going to default you? Would that have motivated the city to comply with the discovery request? I cannot say as a matter of fact on the record in this case. I would hope that it would encourage any litigant to comply with discovery. But again, whether entry of default is an appropriate exercise of discretion is a different issue. I do not believe that if a litigant is informed, I have a motion to compel before me, I'm just going to default you if you don't start complying. And then the court defaults. I don't believe that that makes it less an abuse of discretion to use a last resort as a first sanction. But the court advises you that if you don't comply with discovery by a certain date, they give you 30 days to comply, and then you still fail. Is the default judgment an appropriate sanction? I do not believe so. I do not believe necessarily so, because a number of circumstances could intervene. It could be difficulty, as here, using the Contersi deposition as an example. Ms. Contersi, it appears the problem here was difficulty in scheduling a time that she was actually working, that it was trying to find a time that fit in her schedule that she could come in. How many monetary sanctions does the court enter before they impose a default judgment? I cannot speak to how many that is. That will turn on the facts of a case. It will turn on the extent of discovery, the extent that discovery has not been requested. Also, there may be issues of progressive sanctions that might be beyond monetary, so there may only be one monetary sanction, and then a certain witness might be stricken or a certain fact might be deemed admitted. A certain issue might be taken out of contention. There are a host of different sanctions, so I cannot speak to how many, because it will turn on case to case to case, and that is for the discretion of the circuit court, which was just simply not exercised here. It just entered a default, did not take into account any circumstances, and did not even humor the possibility that a lesser sanction, more than, you know, whether a higher monetary sanction or something other than monetary sanction but less than a default, would have advanced discovery here. It just entered a default. Was that argument made to the judge at the time of the entry of the default? I am not aware. It is not in the record. So if it is not in the record, then it did not happen. So you are saying, you know, the judge says, I am going to enter a default and the city apparently does not say, well, wait a minute, that is not the law. You should be entering something lesser than that. That argument never raised. Well, there is an issue here that the sanction was entered almost, you know, with great haste after Mr. LoCasto filed his motion to compel him for sanctions. It was within approximately a week. I believe it was exactly a week, but it was within a week. Hardly time to respond to put together a response. Did you ask for a response? I am not aware. Okay. So if you are not aware, then apparently it did not happen. So, I mean, the city could have asked, this is an important situation when our defense might disappear and you do not ask for any kind of response or put anything in the record to counter potential because the motion itself said we are going to ask for a default. But that was highly inappropriate. Well, but you have got to tell the judge that. And if the city does not tell the judge that, whose fault is that? It still falls on the circuit court judge to exercise his discretion appropriately. And, again, the law is clear that entry of a default as a sanction of first resort is inappropriate, that that is an abuse of discretion. The appellate court has made quite clear to the circuit court that progressive sanctions, that completion of discovery, that trial on the merits are the goal of discovery sanctions, that discovery sanctions are not to punish a party. They are merely to ensure that the litigation moves forward. That the court was not formally on the record informed of this fact does not make it less of an abuse of discretion, does not make it less of a devastating impact on the ultimate goals of discovery. That fact still remains. The discretion is still abused, even if the court doesn't have the law laid out for it. But the city had another opportunity when it came back about a month later. Then it had a third opportunity and a fourth. And it still did not say, well, wait a minute, judge, what are you doing? You can't do this on the first hearing. Look at these cases. You've given us the cases that say otherwise. But the city didn't do that. When a party doesn't stand up for itself, what are we supposed to do? I believe that the court should make sure that justice is done and make sure that the primary goals of discovery are not frustrated and that it is a trial on the merits, which did not occur here. No trial on the merits occurred here. That is all the city was requesting as far as that discovery goes. And that was clear from the beginning, a trial on the merits. And that was not had. That's not a high standard. That's the same request that every defendant makes. Who did Ms. Contorsi work for, the city? I believe she worked for the city. I'm not entirely sure. Her time was the city's time. Why wasn't she available any day? From what I understood, I understood that she was not a full-time employee. I don't want to speak to that, but that she only worked certain days. But she was an employee of the city. As I understand, yes. My next question is, even if you thought that the default wasn't the first thing that should have happened, wasn't there anybody in the city that said, oh, my God, we're going to lose all this money if we don't snap to it and get our act together? I cannot speak to that. That is outside of my knowledge. But, again, also to highlight what exactly Ms. Contorsi was. She was being called in regard to document production, to her knowledge of the documents produced, that the default was that the city was defaulted and that a $2 million judgment was entered because of a record keeper not being deposed. Particularly when certain defendants appear to have no relation at all to Ms. Contorsi. How Mr. Longini could be responsible for Ms. Contorsi. How Ms. Porter could be responsible for Ms. Contorsi. How any of the individual defendants could be responsible for Ms. Contorsi not coming in. They all have the same lawyer. They all have the same lawyer, but they don't have any power over her and the default was entered against her. And it's just not clear from the record how that severe of a sanction was justified against them when they had no unusual power to compel her to take a deposition. And that certainly there were options available to the circuit court to compel Ms. Contorsi to come in and those weren't sought either. But at the end of the day, the fact remains, this was a discovery sanction of first resort. It was unrelated in any way, shape, or form to the previous default that was entered. A default that was vacated. The sanctions, the attorney's fee sanctions that were related to that were paid. And then the first time Mr. LoCasto complained about discovery, a default was entered. And that is squarely an abuse of discretion. It frustrated the purpose of the discovery. Prevented a trial from being held to the merits. And that is all the city requested in this case was a chance to be heard, to be heard for its witnesses, for the evidence to be considered. And that did not happen here. And we submit that that was a clear, undisputable abuse of discretion. And we ask the court to vacate the default. If there are no further questions. Counsel, this is clearly not a situation where the sanction was a first resort. I had to put together an outline because of the amount of orders which were entered. And the sanctions prior to the discovery sanctions. And then the sanctions after the initial discovery sanctions were put into effect. But the sanctions before discovery had to do with the answer. Is that correct? Well, it had to do with the answer and misrepresentations made to the court. And that was a motion to dismiss? Motion to dismiss. It was identical word for word with I think one sentence was different. They made the representation to the court that it was on different grounds. There was no different citations. It was not on different grounds whatsoever. But that's 137. That's 137, correct.  Well, the purpose of 137 sanctions is to make it clear to the court that the purpose of 137 sanctions, when there's misrepresentations to the court and when there's the halt of litigation, et cetera, et cetera, they kind of fold in hand-in-hand with 219C sanctions. No, that's not. My question is what is the purpose of 137 sanctions? Is there a purpose for them? There is a purpose for them. What's that purpose? When there's dishonesty and misrepresentations to the court, it's to get the parties to conduct themselves in accordance with the rules and the court orders. Is that what it is? Is it to coerce them to do something or is it to penalize them? It's to penalize them for their conduct. Penalize them. Okay. What is the purpose of 219 sanctions? To get the parties to comport with court orders and with discovery consistent with the rules of civil procedure and orders specifically before the courts that the litigants practice. That's not to punish them, is it? It's not to punish them whatsoever. So there's a very different purpose between 137 and 219. And why would the 137 have anything to do with the 219? Well, because the case, you can't take the case in a vacuum. You've got to look at the case from its inception and the history of the litigants and what was going on before the discovery sanctions were imposed. Well, would it matter if the 137 sanctions were afterwards? I mean, in this case, this happened to me before. Right. Are you saying that if they occurred after the 219, the court should go back and say, boy, we've got to treat you differently, we've got to make it worse? I mean, it just so happened in this case, 137 came first. Right. But doesn't it make perfect sense that 137 should not enter into the court's consideration of 219 because the objectives are different and what is being complained of is different and the factors are different? Well, one of the main objections in any form of litigation is to try the case on the merits. Right? So that didn't happen because of the conduct of the defendant. That's why 137 sanctions were entered and that's why 219C sanctions were entered. But the 137 were vacated. They were vacated after the city agreed. They were vacated. We had to have about four hearings before the city would agree to make any payment, which ultimately they never did and the court ordered payment. And then they made the payment three months late and then we were kicked back into the discovery mode. And I'm thinking, as any litigant would after such a severe misconduct by the defendant, that everything was going to go as a matter of course and that we would utilize the rules governing practice, the rules of civil procedure as most litigants do. Most litigants don't have to run to the court and say, hey, judge, we're not getting discovery. Most litigants utilize the code of civil procedure and they go back and forth in accordance with the code of civil procedure and they have an open exchange of discovery. When there's a problem with an open exchange of discovery, then you go to the court and say, hey, judge, we're not having an open exchange of discovery. Here in this specific case, we did not have that. We had to – well, we tried that. We sent the defendants 14 201K requests for discovery. There was an order entered when the case was – when they were – So you're saying before – Before the first sanction. Before the first sanction. Before the first sanction, Your Honor. Yeah. But, again, if – why should the first sanction right out of the box – the fact is if you sent that many 201Ks, obviously you're having problems. And so how many times did you go to court before that requesting for the default on discovery? Three times. Before you got the default. And were there any orders then? I thought the first order of sanctions was the default. It was July 22nd. Right. And it was a default with a caveat that said the city shall do X, Y, and Z, answer interrogatories fully, produce documents. You've got to recall that there was an order before the July 22nd order was entered. On April 21st, there was an order entered requiring all discovery to be completed by May because this case has such a long history and we're already a year and a half into the case and not a single document, not a single sheet of paper was produced by the city. And I produced over 2,000 pages of records. So on April 21st, they had until the end of May to answer interrogatories and produce documents. They don't do that. I continue to write them letters saying what's going on? You're in violation of the court's order. What are you going to do? What are you going to do? I need the records. I get these responses saying, well, by the next time we get to court, you should have some documents. That's not in compliance with that. That's already said, you know, hey, court, we're not going to agree with your May 24th date that was set in April. You know, we're just going to do what we want to do. And if we get there, we might have some documents. We might not. We might answer some interrogatories. We might not. So I continue to paper them saying, look, if I don't get these documents, I'm going to ask for a default. On July 22nd, so I don't get, by July 22nd, I don't get a single sheet of paper. Okay, so this is in violation of the April order and then the prior order, which put the case back into the discovery mode, entered in January of 2009. Although you may have told the defendants that you would seek default. Right. The court hadn't said anything about that. True. And so it was the first time the court had an opportunity to determine what, if anything, to do about the lack of cooperation. And the first thing the court does is follow your lead and say, you lose. And then it holds off entering that. But it says you lose. Isn't there something, to go back to Justice Neville's question earlier, isn't there something the court could have done that wouldn't have been so severe, that could have still obtained the discovery? To be honest, at that point, because of the conduct of the defendant, no. Okay. How do we know this? Should a court, if the rule becomes, I mean, what would be the effect of this case? If you're upheld, what is the effect on the next case? So if somebody does not abide by a management order, okay, it says all discovery can be done by May 31st, they don't abide by it, then the opponent can go into court and ask for a dismissal or a default judgment, and the court's going to enter it? That should be the rule of this case? No, no, that's not the facts of the case. There's a January order saying that discovery is to be completed. There's an April order that says discovery is to be completed. It's not completed. Fourteen rule, 14-201-K. And then a motion is filed, and then a motion to compel well before we're back in court on the very first date that the court enters the order is filed. And then we've got, after that, we've got eight additional violations of court orders and not producing documents, not producing witnesses. When the court on September 16th of 2011 says, when they produce documents, they produce one affiant in accordance with 214 saying that the records are complete. A week later, they pull that rug out and say, here's a new affidavit. We're going to say that the same records are complete. They get 30 days to produce both affiants. They substitute Monica Porter on the date that the deposition is set, which was noticed before that and within that 30-day period. They show up and say, we're not going to produce. I understand the court could be very frustrated, too. But you're trying to get what you are entitled to. But the question still for us seems to be, how do we do that? In fact, in this case, the defendant, instead of having an opportunity for lesser sanctions to be imposed, you said they went before the court twice before. But at neither of those times were any sanctions, were they requested? Were sanctions ordered? No. So the first time that you ask for sanctions, I mean, you're the one that asked. You asked for the most severe available. Now, why should that be the rule under these circumstances? And particularly when, well, why should that be the rule in this circumstance? How do we define it? Well, because of the totality of the topic. You've got to look at this case. I mean, we're not dealing with a case with liquidated damages. So there's a default enter, but there's no judgment entered on any damages. So what the judge is doing is saying, okay, guys, play nice. Get these documents together. Now I'm upset. I'm going to give you seven days. I'm going to give you 14 days. I'm going to give you 21 days. Okay, you're still not complying. So it's not, if you look at the facts of this case compared to the Gonzalez case or any of the other cases, the facts of this case are 100 times more egregious than those cases. I mean, you have complete disregard of the court's authority and court order, and you've got absolute disregard of the rules of procedure. Anytime somebody doesn't abide by a rule or an order, that's what you hit. They're ignoring it. So that's no different than any other case. You're just saying that you built up a number of actions, and there may have been a disagreement as to what discovery was appropriate to be, you know, objections to the interrogatories or deducting requests and so forth. I can see some back and forth. And finally, after a number of months, the only thing left was the deposition. And it's then that the guillotine comes down. So then we've got a progressive application of the discovery of 219C from month to month, from appearance to appearance to appearance for, I think, six appearances. And then on the seventh appearance, it just says, you haven't produced this witness. Mr. Hart came to depose this witness the day before you said you're going to produce her. We show up, and she's not presented for the deposition. Am I then just supposed to step back and say, okay, judge, you know, just let's keep doing this every week, and then, you know, eventually, you know, we'll get some, you know, some good feelings that the city's going to do or whatever defendant's going to do what they're supposed to do. But the only sanction that was ever imposed was the entry of that default judgment, correct? No. No, there was a default judgment, and the case was sent for approval. Well, there was the monetary sanction. Right, right. And then this default judgment, correct? True, true. Counsel, answer this question for me. Should I be concerned as a judge sitting here when a party comes in and says to me, judge, I've been denied my day in court. I did not receive all the process I was due. In fact, this large judgment was entered against me. I'd like a trial on the merits. Should that be of concern? They've acknowledged that they didn't comply with all of your discovery requirements. Well, that should be. Or they were supposed to. Yeah, that's. So, but what do you, how do you think I should respond to that argument? I didn't get my day in court. Right. I didn't get my, all the process I was due. What do I say? Well, if you're talking in a vacuum, not this case. No, I'm discussing this case. Okay. If you're discussing this case, I think due process is tantamount to litigation. They received all the process they due as far as you're concerned. Absolutely. And then some. I mean, they didn't get three bites of the apple. They got 14 bites of the apple. They actually ate a whole bushel of apples is what they got. You know, the Supreme Court in Buehler v. Waylands makes a statement, which is apropos in this case. Our discovery procedures are meaningless unless a violation entails a penalty proportionate to the gravity of the violation. Discovery for all parties will not be effective unless trial courts do not countenance violations and unhesitatingly impose sanctions proportionate to the circumstances. So, in this particular case, the trial judge gave them every opportunity to comply, and they didn't comply. There was a default under it. The case was sent for approval. Another judge looked at the motion to vacate the default and said that, and this is Judge Egan looking at the entry and says, what is going on here essentially? And he says, no, I'm not going to grant a motion to vacate that default. And then we have. Well, isn't that because judges are usually reluctant to. I mean, it was sent to him for approval. True. I can understand a judge saying. And he did say, go back to Judge Lawrence. So, that's not before me. Judge Lawrence, it's his order. And they did go back to Judge Lawrence. So, I don't see that as meaning anything. Well, I don't think any judge makes any determination lightly. I think they will look at the facts and they will look at the history. The only thing before Judge Egan that day was to have a hearing on what the amount would be. No, both of them were set that day. Both of them were set. Motion to vacate, I understand. Yeah, both of them were set. But he wouldn't hear that because that wasn't an order he entered. Well, he heard it. He heard it. Well, he said, I'm not going to. He said, I'm not going to. If you want to have that heard, go to Judge Lawrence. No, we had 45. No, you're talking about the earlier one. No, I'm talking about the later one. No, the later one, no, that's not the facts. He spent 45. We had 45 minutes of argument. And then he left the bench for another 30 minutes to look at the court record. And then he came back and says, I'm not going to vacate this. He denied the motion to vacate. He denied it on that date. On the same date as the prove up. If I look at the order, it's going to say that the motion to vacate was denied. True. It wasn't on my understanding. So if we're talking about a case where we've got a tort and the judge, as his sanction, says, okay, I'm going to enter a default but come back. If you're in compliance, then we're going to essentially look at this from a new focus. And then we're going to go on with discovery as we should go on. But when this happens over and over, and I'm not going to say over eight times, but that's precisely what happened. The only sanction was the default. No, but they got the opportunity to comply with discovery. And the order is. But the only sanction, I mean, what we're talking about here is the sanction. Well, what other sanction is it? I mean, that's a sanction, a default judgment, right? Under 219C, I think it's five. A default judgment is one of the most severe sanctions. He entered a default, not a default judgment. At the end of the case when it was sent for prove up, then the default judgment is entered on October 22nd. And then the case goes on November 3rd for the prove up. So, I mean, if you compare this case to any other case where this court has upheld this sanction, the facts of this case are far more egregious. So if you're talking about what's the impact of this case going to have on litigation, well, let's hope it causes litigants to act appropriately and follow court orders and follow the rules of civil procedure. Thank you, really. Thank you. Thank you. Just a few matters in response. First, Mr. LoCasto, opposing counsel, is making representations regarding the record saying that certain representations were made to the circuit court regarding the motion to dismiss. But I've been unable to locate anything in the record that indicates that such representations were made. Counsel admitted that the motions to dismiss were actually different. And my review, I believe that they were different. He admitted there was at least a sentence that was different in those motions and that there's nothing in the record, as Your Honor noted. If it's not in the record, then it did not happen. But there's simply nothing in the record to indicate that these supposedly false representations regarding the motion were ever made. There's just nothing in the record. Second, it's completely false, Mr. LoCasto's representation, that he received no sheets of paper. In response to his discovery request, on July 21st, this is on the main record from pages 702 through 733, there were answers to interrogatories by several of the defendants, the individual defendants. Then there were amended answers later on August 25th. That's from 794 to 810. Then there were more amended answers from 829 to 847. And that's just merely what's in the record that was filed in the court. So to say that no responses were made prior to the entry of the default sanction is just flatly false. And it's clear from the record that the defendants were complying with discovery. Furthermore, the record indicates, again, a factor that should be taken into account. In at least one of the email exchanges, I believe it was an email exchange, it might have been a letter exchange, trial counsel explained that he was in the midst of trial while preparing these responses and that he would try to get the responses to Mr. LoCasto. That's obviously a factor that should be taken into account. Again, that should go towards what sort of sanction is imposed. If it's not, you know, this is not a case. Mr. LoCasto represents that this is a more egregious case than any that's come before. That's flatly untrue. There are cases that involve individuals refusing, saying I will not comply under any circumstances. I do not believe I should comply. That was not what happened here. The defendants were complying. And at the end of the day, when the default sanction became a default judgment, after the prove up, all that remained was the deposition of a record keeper. And certainly a more limited sanction than a default could have been entered that would have accommodated that fact and moved this on to a trial on the merits. That it was merely a record keeper, a deposition of a record keeper. It's unclear Mr. LoCasto has never explained what substance, what substance for his claims or what substance that would undermine the defendant's defense would have come from the record keeper, Ms. Contersi. And that resulted because Mr. LoCasto refused to take that deposition. As we argued, he waived that deposition by refusing to take it when it was offered. On October 21st, the city was still offering that deposition. So we believe that request was waived outright. But that was ultimately what the circuit court thought should prevent a full trial on the merits, was the deposition of a record keeper. We submit that, again, that the entry of default as a sanction of first degree is greatly troubling. And this court should not allow that to be, should not give the impression that it would be allowed to enter the most severe sanction available and prevent discovery and a trial on the merits. And we ask this court to vacate the default and remand this matter for further proceedings. Thank you very much. Thank you to both counsels. We'll take the matter under advisement. May I ask for your response to that? No. Okay. Thank you very much. Thank you guys.